UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARILYN OLSON, on behalf of Steven W. Olson, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 12-CV-00563-VEB<br><br>DECISION AND ORDER |

# I. INTRODUCTION

Plaintiff Marilyn Olson commenced this action on behalf of Steven W. Olson, her late husband, pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3) seeking judicial review of the Commissioner of Social Security's application of the Social Security Act's offset provisions. The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 5).

On February 3, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 26).

## II. BACKGROUND

The procedural history may be summarized as follows:

In May of 2005, the Social Security Administration ("SSA") awarded benefits to Steven W. Olson, Plaintiff's husband, finding him disabled as of March 2, 2002, due to chronic lymphatic leukemia, fatigue, nausea, and carpal tunnel syndrome. (T at 11, 131).[1] Shortly thereafter, Mr. Olson, through counsel, advised the SSA that he had received a permanent partial disability ("PPD") award under Washington State's workers' compensation program, in the amount of $16,207.68, based on bilateral hearing loss. (T at 31-34). Mr. Olson indicated that he did not believe the SSA was entitled to offset the PPD award against his benefits. (T at 31-34).

The SSA disagreed and reduced Mr. Olson's benefits. (T at 16). The actual amount of the offset was the subject of several redetermination calculations conducted by the SSA between 2005 and 2009. (T at 11-12, 40-43, 54-57, 62-65, 66-73, 74-77, 80-83). Mr. Olson passed away on April 27, 2006, and Plaintiff was substituted in his place. (T at 11).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 10.

In March of 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to determine whether the PPD award was subject to the offset provisions of the Social Security Act. (T at 89-90, 91-92). On May 26, 2010, ALJ James Sherry ruled in Plaintiff's favor, concluding that, under Washington state law, the PPD award was not a "substitute" for periodic benefits and was therefore not subject to offset under federal law. (T at 120-28). On July 23, 2010, the Social Security Administration Appeals Council *sua sponte* vacated ALJ Sherry's decision and remanded the matter for reconsideration. (T at 130-42). The parties, through counsel, submitted additional legal briefing. (T at 12). The ALJ issued a new decision on January 12, 2011, finding that the PPD award did trigger the offset provisions of the Social Security Act. (T at 8-14). The ALJ's second decision became the Commissioner's final decision on August 20, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

On October 9, 2012, Plaintiff, acting by and through her counsel and on behalf of her late husband, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 1). The Commissioner interposed an Answer on December 20, 2012. (Docket No. 9).

Plaintiff filed a supporting Brief on September 3, 2013. (Docket No. 15). Although Plaintiff did not file a summary judgment motion, her Brief requests that

relief (Docket No. 15, at p. 10) and this Court will deem the Brief to be a motion for summary judgment. The Commissioner moved for summary judgment on November 8, 2013. (Docket No. 22). As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 5).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

### III. DISCUSSION

**A.     Social Security's Offset Provision**

The Social Security Act provides, in pertinent part, that a recipient of disability benefits, who is also entitled to "periodic benefits on account of his or her total or partial disability . . . under a workmen's compensation law or plan of the United States or a State" shall have his or her Social Security disability benefits reduced by the amount by which the state workers' compensation[2] benefits exceed the higher of: (a) 80 percent of the recipient's average current earnings; or (b) the total of the recipient's Social Security disability benefits. 42 U.S.C. § 424a(a)(2-6).

---

[2] Although the Act references "workmen's compensation," many modern jurisdictions use the phrase "workers' compensation."

The SSA is obliged to follow this offset provision when it applies. *See* 42 U.S.C. § 424a (a)(2).

A non-periodic ("lump sum") payment received under state workers' compensation law may be considered a "periodic benefit" subject to offset if the payment was, in reality, "a commutation of, or a substitute for, periodic payments." 42 U.S.C. § 424a(b); *see also Black v. Schweiker*, 670 F.2d 108, 109-10 (9th Cir. 1982). This case presents the issue of whether a lump sum ("PPD") award under Washington State's workers' compensation program is a "substitute" for periodic payments subject to the Social Security offset provision.

B.   **Ninth Circuit Precedent**

The Court of Appeals for the Ninth Circuit considered the offset provision in *Hodge v. Shalala*, 27 F.3d 430 (9th Cir. 1994). The court noted that the purpose of the offset provision was to prevent double recovery and found that its scope was "extremely broad." *Id.* at 432; *see also Richardson v. Belcher*, 404 U.S. 78, 82-83, 30 L.Ed.2d 231, 92 S. Ct. 254 (1971)(discussing offset provision's legislative history and noting Congress's concern that duplicate recovery of workers' compensation benefits and Social Security disability benefits would decrease a worker's incentive to rehabilitate and seek further employment).

*Hodge* involved a workers' compensation award under Oregon law. *Id.* The claimant received a lump-sum award based on a right forearm injury. *Id.* The amount of the award (which is called a "scheduled award" under Oregon law) was determined based upon the value of the injured body part without reference to the claimant's earnings. *Id.* at 433 (citing Or. Rev. Stat. §§ 656.214 (2) – (4)).

The claimant in *Hodge* argued that his scheduled award was not a "periodic benefit" subject to the Social Security offset provision. *Id.* The claimant contrasted his scheduled award with another type of award available under Oregon's workers' compensation law, an unscheduled award, which is calculated by reference to the claimant's loss of earning capacity. The claimant conceded that unscheduled awards are "periodic benefits" subject to offset, but argued that scheduled awards were not substitutes for periodic benefits because they are determined without reference to wages. *Id.* at 432-33.

The Ninth Circuit rejected the claimant's argument, finding that under Oregon law, "*both* types of awards – scheduled and unscheduled – are intended to cover a claimant's lost earning capacity." *Id.* at 433 (emphasis original)(citing *Cutright v. Weyerhaeuser Co.*, 702 P.2d 403, 407 (Or. 1985)). Thus, *Hodge* held that a scheduled award granted under Oregon's workers' compensation law is a "substitute

for" periodic benefits and is therefore subject to the Social Security offset provision. *Id.*

This Court is aware of only one published decision applying *Hodge* to a workers' compensation award under Washington State law. In *Kreutner v. Astrue*, No. C09-5676, 2010 U.S. Dist. LEXIS 68188 (W.D.Wa. June 8, 2010, the claimant received a permanent partial disability ("PPD") award based on a mental health impairment. *Id.* at *2.  The award involved a lump sum payment (known under Washington law as a "PPD award") determined without reference to the claimant's loss of earning power. *Id.* at *6.  The court found that the Washington State PPD award was subject to the Social Security offset provision. *Id.* at *7-*8.

The *Kreutner* court's ruling was based in its conclusion that the "entire scheme of Worker's Compensation law is to compensate workers, who are active in the labor market, for wages lost because of inability (or reduced capacity) to work as a result of a compensable injury . . . ." *Id.*  at *7 (quoting *Hodge*, 27 F.3d at 433). The court concluded that any distinction between the workers' compensation laws of Oregon and Washington was "a distinction without a difference" and, as such, the *Hodge* precedent dictated a finding that the PPD award was subject to offset. *Id.* at *6-*7.

In the present case, the ALJ cited *Kreutner* in support of his decision on reconsideration finding that the offset provision applied to Mr. Olson's PPD award. (T at 14).

**C.     Analysis**

Although the interpretation of the Social Security offset provision is a question of federal law, the application of the provision requires a review of state workers' compensation law. *See Hodge*, 27 F.3d at 432-33. This Court, upon consideration of Washington State law, finds that the interpretations of the Commissioner of Social Security and this Court's sister court in *Kreutner* are incorrect. In particular, this Court finds the reasoning in *Hodge* binding, but its result distinguishable based upon the uniqueness of Washington state law as distinguished from Oregon state law, and concludes that Plaintiff's PPD award was not subject to offset.

The Ninth Circuit's ruling in *Hodge* was based on its conclusion that "even though the Oregon legislature had assigned specific dollar amounts to particular body parts, scheduled payments [were] still 'designed to compensate for the economic loss of earning capacity.'" *Hodge*, 27 F.3d at 433 (quoting *In re Woodman*, 614 P. 2d 1162, 1164 (Or. 1980)). In other words, the Ninth Circuit's application of the Social Security offset provision was premised upon its reading of

Oregon state law, and, in particular, an examination of the precedents discussing the purpose of the state's workers' compensation law.

In this regard, the Ninth Circuit relied principally on *In re Woodman*. In that case, the Supreme Court of Oregon recognized that the "scheduled award" was determined without reference to the claimant's earnings capacity, but found that this formula was a matter of convenience "somewhat like liquidated damages" that "serve[d] to simplify and expedite settlement of such claims by excluding disputed predictions of the claimant's future earning capacity." *Woodman*, 614 P.2d at 1164.

In *Cutright v. Weyerhaeuser Co.*, 702 P.2d 403, 407 (Ore. 1985), another decision cited by the Ninth Circuit in *Hodge*, the Supreme Court of Oregon held that its state legislature "intended workers' compensation benefits to provide wage replacement . . . ." In other words, *Hodge* was based on the fact that, under Oregon law, scheduled and unscheduled awards serve the same purpose (wage replacement) and, as such, are both subject to the Social Security offset provision.

In Washington, however, the workers' compensation law serves a dual purpose and is not designed solely to compensate for the economic loss of earning capacity. Under Washington law, a worker injured so severely that he or she is unable to work, may be classified as "permanently totally disabled." Rev. Code Wash. § 51.08.160. A worker is compensated for a permanent total disability via

periodic payments or a lump sum based on a percentage of the worker's wages. Rev. Code Wash. § 51.32.060.  In addition, Washington's workers' compensation law contains a schedule of "permanent partial disabilities," which are defined as "loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, . . . or any other injury known in surgery to be permanent partial disability." Rev. Code Wash. § 51.08.150.  Hearing loss is a scheduled partial disability. Rev. Code Wash. § 51.32.080 (1).  Mr. Olson received this type of award (a "PPD award").

Washington state law allows for recoveries that would be considered "duplicative" if the sole purpose of its workers' compensation system was designed to compensate for lost earnings capacity.  For example, a worker who receives a PPD award and is subsequently found to be permanently and totally disabled based on an unrelated occupational injury or disease may receive his or her full benefits, "notwithstanding the payment of a lump sum for his . . . prior injury." Rev. Code Wash. § 51.32.060(4); *see Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 586, 925 P.2d 624 (1996).  Likewise, a worker who is determined to be permanently and totally disabled and awarded pension benefits is not precluded from subsequently seeking a PPD award based on a pre-existing unrelated occupational injury or

disease (provided the application for the PPD award is timely filed). *See McIndoe v. Dep't of Labor & Indus.*, 26 P.3d 903, 910 (Wash. 2001),

This is not considered this a "double recovery" because the Washington workers' compensation law is intended to serve two purposes.  As the Supreme Court of Washington explained in *McIndoe v. Dep't of Labor & Indus.*, "[t]he fact that the Legislature took a presumed possible loss of earning power into consideration in order to arrive at dollar amounts to be paid for certain specified disabilities . . . does not lead to the conclusion that the only purpose of the statutes is to compensate for lost wages." *McIndoe,* 26 P.3d at 908.  "To the contrary, the establishment by the Legislature of 'a specific cash award for specific amputations and losses of faculties . . . was necessary if the legislative plan of compensation in accordance with loss of bodily function (as distinguished from partial loss of earning power) was to be accomplished.'" *Id.* (quoting *Page v. Dep't of Labor & Indus.*, 328 P.2d 663 (Wash. 1958) and citing Wash. Admin. Code § 296-20-01002)); *see also Stone v. Dep't of Labor & Indus.*, 172 Wn. App. 256, 262 (Wash. Ct. App. 2012)("These two types of benefits are 'separate concepts'").

In *McIndoe,* each of the plaintiff workers was injured on the job and awarded permanent total disability benefits.  Thereafter, they filed claims for hearing loss sustained in unrelated injuries that occurred before the injuries that led to their

permanent disability awards. The Washington Department of Labor & Industries denied the claims on the grounds that making a PPD award would result in a double recovery. *Id.* at 905.

The court rejected the Washington Department of Labor and Industries' argument that both types of workers' compensation awards (a PPD award and permanent total disability) "are compensation for wage loss," finding that argument inconsistent with Washington's workers' compensation statute. *McIndoe*, 26 P.3d at 909. In particular, the court cited Rev. Code Wash. § 51.32.060 (4), which expressly permits a claimant to receive both types of benefits, provided they arise from different injuries.

The Washington Supreme Court also reviewed its precedents on this subject, including *Davis v. Bendix Corp.*, 917 P.2d 586 (Wash. Sup. Ct. 1996). In *Davis*, the court stated that "permanent partial disability compensates the claimant for future lost earning capacity measured by a percentage of loss of bodily function." *Davis*, 917 P.2d at 590. In *McIndoe*, the court held that "[t]o the extent . . . the statements in *Davis* could be read as meaning that permanent partial disability payments in addition to permanent total disability payments would constitute double recovery because both compensate for lost earning capacity, it is disapproved." *McIndoe*, 26 P.3d at 909.

In further support of its reasoning, the *McIndoe* court noted that, under Washington law, "[a]n injury may have no effect at all on the worker's wage earning capacity, yet the injury is fully compensable" via a PPD award. *McIndoe*, 26 P.3d at 908 (citing *Kostida v. Dep't of Labor & Indus.*, 247 P. 1014, 1016 (Wash. Sup. Ct. 1926)(finding that while loss of one testicle had no effect on claimant's wage earning capacity, a PPD award was permitted because "[o]ne has a right to remain in possession of all those useful members of his body which are provided by nature")).

The Washington Supreme Court's reasoning in *McIndoe* is unlike the Oregon Supreme Court's analysis in *Woodman*, which (as discussed above) concluded that Oregon's legislature created "scheduled" and "unscheduled" awards to serve the same purpose (wage replacement) via different calculation formulas. *See Woodman*, 614 P.2d at 1164. This is far from a distinction without a difference. In fact, the difference is dispositive.

With regard to the applicability of the federal Social Security offset provision, this Court reads the Ninth Circuit's decision in *Hodge* as an instruction to look to the underlying state law to determine whether a particular workers' compensation award is intended to compensate a claimant for lost earning capacity. *See Hodge*, 27 F.3d at 433 (citing and discussing *Woodman* and other Oregon state precedent in support of holding that Social Security offset provision applied).

As discussed in detail above, the Washington Supreme Court has held that a PPD award may be given for reasons unrelated to lost earning capacity and, indeed, may be awarded without double recovery concerns where the claimant has already been compensated for his or her lost earning capacity based on an unrelated injury. *McIndoe*, 26 P.3d at 908-10.  As such, where (as here) the PPD award was made for a separate injury,[3] there is no double recovery implication under Washington law. The Social Security offset provision's concern with double recovery, *see Hodge*, 27 F.3d at 432, is thus not implicated here.

This Court recognizes that two Circuits have adopted the view that PPD awards are subject to offset by definition as matter of federal law, irrespective of whether a particular state characterizes its PPD (or "scheduled") awards as something other than wage-loss disability benefits. *See Olson for Estate of Olson v. Apfel*, 170 F.3d 820, 822-25 (8th Cir. 1999); *Grant v. Weinberger*, 482 F.2d 1290, 1292 (6th Cir. 1973).  However, the Ninth Circuit did not cite these cases or articulate this rationale in *Hodge*.  Instead, as discussed above, the Ninth Circuit engaged in an extensive analysis of Oregon Supreme Court precedents (including, in particular, *Woodman*) interpreting the purposes of the state workers' compensation

---

[3] Mr. Olson was found to be disabled under the Social Security Act due to chronic lymphatic leukemia, fatigue, nausea, and carpal tunnel syndrome. (T at 11, 131).  He received the PPD award under Washington's workers' compensation law because of bilateral hearing loss. (T at 31-34).

law. *Hodge*, 27 F.3d at 432-33.  Washington State's precedents are materially distinguishable from the Oregon precedent relied upon in *Hodge*. As such, applying the methodology employed by the Ninth Circuit in *Hodge* and interpreting Washington State precedent, this Court finds that Mr. Olson's PPD award was not subject to the Social Security offset provision.

## IV. ORDERS

**IT IS THEREFORE ORDERED** that:

Plaintiff's Brief, **Docket No. 15**, is deemed a motion for summary judgment and that motion is **GRANTED**,

The Commissioner's motion for summary judgment, **Docket No. 22**, is **DENIED**, and

This case is **REMANDED** for a recalculation and refund of any offset against Mr. Olson's Social Security benefits.

DATED this 9th day of April, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE